

# FANON RUCKER
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

## ELECTRONICALLY FILED
## December 23, 2021 08:50 AM
## FANON RUCKER
## Clerk of Courts
## Hamilton County, Ohio
## CONFIRMATION 1142214

### KARL SAINT VIL

### A 2104400

### vs.
### BLUE ASH HEALTHCARE LLC

## FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND

## PAGES FILED: 14

EFR200



DEFENDANT'S EXHIBIT

A

**IN THE COURT OF COMMON PLEAS**
**FOR HAMILTON COUNTY, OHIO**

| | |
|---|---|
| KARL SAINT VIL<br>4035 Helton Dr., Apt. 17<br>Middletown, OH 45044<br><br>             Plaintiff,<br><br>        v.<br><br>BLUE ASH HEALTHCARE, LLC<br>d/b/a Cooper's Trace Skilled Nursing and<br>Rehabilitation Center<br>4900 Cooper Road<br>Blue Ash, OH 45242<br><br>     **Serve also:**<br><br>     BLUE ASH HEALTHCARE, LLC<br>     d/b/a Cooper's Trace Skilled Nursing and<br>     Rehabilitation Center<br>     c/o Paul Bergsten (Statutory Agent)<br>     544 Enterprise Dr<br>     Lewis Center, OH 43035<br><br>-and-<br><br>HILLSTONE HEALTHCARE, INC.<br>d/b/a Cooper's Trace Skilled Nursing and<br>Rehabilitation Center<br>4900 Cooper Road<br>Blue Ash, OH 45242<br><br>     **Serve Also:**<br><br>     HILLSTONE HEALTHCARE, INC.<br>     d/b/a Cooper's Trace Skilled Nursing<br>     and Rehabilitation Center<br>     c/o ACFB Inc. (Stat. Agent)<br>     200 Public Square, Suite 2300<br>     Cleveland, OH 44114<br><br>             Defendants. | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COMPLAINT FOR**<br>**DAMAGES AND**<br>**INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff Karl Saint Vil by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## PARTIES

1. Saint Vil is a resident of the city of Middletown, Butler County, Ohio.

2. Defendant BLUE ASH HEALTHCARE, LLC d/b/a Cooper's Trace Skilled Nursing and Rehabilitation Center is a domestic-incorporated, for-profit company that conducts business within the state of Ohio.

3. Defendant HILLSTONE HEALTHCARE, INC. d/b/a Cooper's Trace Skilled Nursing and Rehabilitation Center is a domestic-incorporated, for-profit company that conducts business within the state of Ohio.

4. Defendants were co-employers of Plaintiff, and are referred to collectively herein as "Hillstone[.]"

5. The relevant location of the events and omissions of this Complaint took place was 4900 Cooper Road, Blue Ash, OH 45242.

6. Defendants are, and were at all times hereinafter mentioned, Saint Vil's employer(s) within the meaning of R.C. § 4112 *et seq.*, R.C. § 4123.90, and Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e.

7. On or about October 6, 2021, within 300 days of the adverse employment actions described herein, Saint Vil field a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

8. The Charge of Discrimination is currently pending before the EEOC, and Saint Vil intends to amend this Complaint to include claims of reverse sex/gender discrimination and retaliation under R.C. § 4112 *et seq.* and Title VII.

2

## JURISDICTION & VENUE

9. All of the material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

10. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and/or (3).

11. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

13. Saint Vil is a former employee of Hillstone.

14. At all times noted herein, Saint Vil was qualified for his position(s) with Hillstone.

15. At all times noted herein, Saint Vil could fully perform the essential functions of his job(s), with or without a reasonable accommodation.

16. Saint Vil worked for Hillstone as a Maintenance and Housekeeping Director from January 25, 2021, until Hillstone unlawfully terminated Saint Vil's employment on or about July 6, 2021.

17. Throughout his employment with Hillstone, Saint Vil was significantly overworked.

18. Saint Vil was often getting pulled in multiple directions without anyone else to help him shoulder the work.

19. Owner Matt LNU would frequently assign Saint Vil too many projects and then immediately get upset about something Saint Vil had not completed yet.

20. Saint Vil would tell Matt LNU that he was only one person, that he couldn't do everything by himself, and that he needed help.

3

21. Despite his request for additional help, Hillstone never hired more staff to help Saint Vil.

22. Further, Saint Vil continuously saw and reported maintenance issues that were very dangerous to the general safety of those living and working in his building.

23. The most glaring issue that Saint Vil reported multiple times during his employment were the building's electrical problems.

24. Saint Vil found breakers hooked up to the wrong spots which left live wires exposed, created a fire and shock hazard, and left many outlets broken.

25. Twice Saint Vil was even shocked because of exposed live wires.

26. Saint Vil reported these issues both verbally and in writing to the Administrator John Williams, to HR Representative Melody Rambert, and to a Maintenance worker from another building Sean LNU. These were protected workplace safety and whistleblowing complaints.

27. Despite his numerous complaints of workplace safety concerns, Saint Vil was ignored, and his complaints brushed off.

28. Hillstone did almost nothing proactively and only panicked to fix a problem after the problem festered too long to ignore.

29. In or around May 2021, a Hillstone resident was in bed when an outlet sparked and caught the bed and drapes on fire.

30. One of Saint Vil's housekeeping staff was one of the first people on the scene, reporting the fire to the Administrator and meeting the fire department and first responders.

31. A fire inspector concluded that the fire began from a malfunctioning electrical outlet.

32. After this incident, Saint Vil found himself the scapegoat for the fire.

4

33. Rumors around Hillstone blamed Saint Vil, claiming that it was his fault that the fire started due to his failure to maintain and upkeep the outlets.

34. This was despite that Saint Vil had made numerous protected complaints of these safety hazards before the fire occurred.

35. This was not the only rumor that Saint Vil was victim to.

36. Prior to his hire with Hillstone, there were rumors circulating that Saint Vil was in a romantic relationship with the dietary director.

37. Saint Vil reported these rumors to Rambert and Debra LNU (Director of Nursing), and Debra LNU hosted a meeting about the rumor to quash it.

38. These rumors were damaging to Saint Vil's professional reputation at Hillstone and interfered with his ability to perform his essential job functions.

39. Near the end of his employment, Saint Vil again found himself working diligently on more projects than any one person could reasonably handle including, but not limited to, the kitchen and a resident's room.

40. To accommodate the kitchen staff, who refused to let him work during the day, Saint Vil would work full day shifts and then stay late into the evenings only leaving to sleep for a few hours before returning to work.

41. Saint Vil also worked on the resident's room, which had a leak in the ceiling.

42. Saint Vil had to trace the leak onto the roof and set down plastic to prevent more water from seeping in.

43. Saint Vil decided to hire a specialist in the roofing industry to come in and help repair the leak.

5

44. Soon, the roofing contractor came to Saint Vil and said they refused to do any more work until Hillstone paid them.

45. Saint Vil had to go complain about this issue multiple times until the contractor was finally paid.

46. Then on or around July 5, 2021, Saint Vil received a call while working on the roof. It was from Rambert who asked Saint Vil to come down to her office.

47. When Saint Vil went down to meet Rambert, she told him that his employment was being terminated for poor performance and incomplete projects.

48. Hillstone did not give Saint Vil a second to respond and demanded he turn in his keys and leave the property.

49. Hillstone's refusal to take Saint Vil's complaints of workplace safety concerns seriously created a dangerous situation for both the workers and residents.

50. Soon after Saint Vil began making these protected complaints, his employment was terminated for a pretextual rationale.

51. The temporal proximity between Saint Vil's complaints and his termination implies that that Hillstone terminated Saint Vil's employment unlawfully, because he was making the complaints of workplace safety in violation of the Ohio Whistle Blower statute.

52. Saint Vil made complaints to Hillstone about workplace safety concerns, gender/sex discrimination, and Hillstone's refusal to pay its contractors. These were all protected complaints.

53. Dismissing an employee for making similar complaints would jeopardize the public policy because it would discourage similar reporting from other employees.

6

54. Further, Hillstone lacked an overriding justification for the dismissal because it is clear the actual rationale for the dismissal was motivated by Saint Vil's conduct related to the public policy.

55. Saint Vil made numerous complaints to Hillstone management about workplace safety concerns, unpaid contractors, and gender/sex discrimination.

56. None of Saint Vil's complaints were adequately addressed or resolved, and soon after he made these complaints Saint Vil's employment was terminated.

57. The temporal proximity between Saint Vil's complaints and his employment termination implies that Hillstone terminated Saint Vil's employment in retaliation for his protected complaints.

58. Hillstone is a unique employer in that it discriminates against the majority.

59. Not only did Saint Vil face rumors accusing him of sleeping with his female coworkers, but so did other maintenance men who worked for Hillstone.

60. Disparately, the female employees who were caught up in these rumors were not fired.

61. This disparate treatment is evidence of the gender/sex discrimination perpetuated at Hillstone.

62. Saint Vil was shocked twice by exposed live wires while doing electrical work.

63. Saint Vil reported his injuries to Hillstone Management and further explained that the shoddy electrical work throughout the building was a hazard.

64. At this point, Hillstone had a duty to inform Saint Vil of his rights to Workers' Compensation claims for the shocks that he experienced.

65. Instead, Hillstone was silent, ignored his complaints, and terminated Saint Vil's employment before he had a chance to file Workers' Compensation claims.

7

66. This was unlawful interference with Saint Vil's ability to file a Workers' Compensation claim, in violation of Ohio's Workers' Compensation statutes.

67. Hillstone's purported reason(s) for Saint Vil's employment termination was pretextual.

68. Hillstone actually terminated Saint Vil's employment discriminatorily against his sex/gender, in preventative action against him filing for Workers' Compensation benefits, and/or and protected discrimination, workplace safety, and whistleblowing complaints.

69. As a result of the above, Saint Vil has suffered and will continue to suffer damages.

**COUNT I: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52**

70. Saint Vil restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. During his employment, Saint Vil made protected complaints of workplace safety issues and illegal actions taken by Hillstone.

72. Saint Vil reasonably believed that these reports were of illegal and unsafe actions by Hillstone, which the company could correct.

73. In the alternative, Saint Vil reasonably believed these were unlawful acts that threatened the public's health or safety.

74. When Saint Vil first noticed this issue, he verbally complained to Defendants regarding this conduct.

75. Saint Vil gave Defendants an opportunity to cure the reported misconduct.

76. Saint Vil then made written complaints of the same issues to Defendant.

77. When Saint Vil reported the violations both verbally and in writing, Defendants retaliated against him by threatening to terminate his employment if he continued making these protected complaints.

8

78. Defendants then terminated Saint Vil' employment.

79. Defendants' cited reason for Saint Vil' termination was pretextual.

80. Defendants actually terminated Saint Vil' employment in retaliation against his protected whistleblower reports.

81. Defendants' termination of Saint Vil was in violation of R.C. § 4113.52.

82. As a direct and proximate result of Defendants' conduct, Saint Vil has suffered and will continue to suffer damages.

## COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

83. Saint Vil restates each and every prior paragraph of this Complaint as if it were fully restated herein.

84. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in a protected activity under Ohio law.

85. A clear public policy exists and is manifested in R.C. § 4101.11 and R.C. § 4101.12 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe..."

86. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if he is terminated in retaliation for reporting to his employer that he is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.,* (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.,* 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.,* No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

9

87. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

88. Defendants' termination of Saint Vil jeopardizes these public policies.

89. Defendants' termination of Saint Vil was motivated by conduct related to these public policies.

90. Defendants had no overriding business justification for terminating Saint Vil.

91. As a direct and proximate result of Defendants' conduct, Saint Vil has suffered and will continue to suffer damages.

### COUNT III: WRONGFUL TERMINATION AGAINST PUBLIC POLICY

92. Saint Vil restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

93. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

94. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim." (*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

95. Defendants terminated Saint Vil's employment citing pretextual reasons.

10

96. Defendants actually terminated Saint Vil's employment in a preventative action against him filing a Worker's Compensation claim resulting from injuries during the altercation at Hillstone.

97. Defendants' termination of Saint Vil jeopardizes this public policy.

98. Defendants' termination of Saint Vil was motivated by conduct related to these public policies.

99. Defendants had no overriding business justification for terminating Saint Vil's employment.

100.    As a direct and proximate result of Defendants' conduct, Saint Vil has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Saint Vil demands from Defendants the following:

a) Issue a permanent injunction:

    i.    Requiring Defendants to abolish discrimination, harassment, and retaliation;

    ii.   Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.  Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.   Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

11

       v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge Saint Vil's personnel file of all negative documentation;

c) An award against each Defendants for compensatory and monetary damages to compensate Saint Vil for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendants in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Saint Vil's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

_/s/ Evan R. McFarland_
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
    Trial Attorney
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744

12

Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Karl Saint Vil*

13

## **JURY DEMAND**

Plaintiff Karl Saint Vil demands a trial by jury by the maximum number of jurors permitted.

/s/ Evan R. McFarland
Evan R. McFarland (0096953)

14