UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KARL SAINT VIL

    Plaintiff,

  v.

BLUE ASH HEALTHCARE, LLC, *et al.*,

    Defendants.

Case No. 1:23-cv-85

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Defendants Hillstone Healthcare, Inc., and Blue Ash Healthcare, LLC (collectively, Hillstone), fired Karl Saint Vil from his position as a maintenance supervisor at a residential nursing home facility that Defendants operate in Blue Ash, Ohio. Saint Vil maintains that they terminated him because he had complained about unsafe conditions at the nursing home. He also claims that he was subject to a hostile work environment because of his sex. So Saint Vil sued Hillstone, raising several Ohio-law claims and a claim under Title VII of the Civil Rights Act of 1964. (*See generally* Am. Compl., Doc. 4). Hillstone now moves for summary judgment. (Doc. 14). After reviewing the record, the Court **GRANTS** Hillstone's Motion for Summary Judgment (Doc. 14) and **DISMISSES** Saint Vil's claims **WITH PREJUDICE**.

## BACKGROUND

Karl Saint Vil worked as a maintenance supervisor at Hillstone's Cooper's Trace facility from January 25, 2021, until July 6, 2021. (Proposed Undisputed Facts,

Doc. 15, #200).¹ As maintenance supervisor, Saint Vil was required to perform regular inspections of rooms at the nursing home and perform necessary repairs. (Saint Vil Dep., Doc. 15-2, #233, 277–78). His tasks were wide-ranging and included cutting grass, repairing the air conditioning unit, patching cement floors, installing security cameras, fixing electrical outlets, and performing any "safety repairs." (*Id.* at #277–84, 296–97). On two separate occasions, once while switching an electrical outlet and once while manipulating a wire in the ceiling, Saint Vil sustained an electric shock. (*Id.* at #296–303). But he was not injured by the shocks and did not file a worker's compensation claim. (Doc. 15, #204).

One recurring maintenance issue during Saint Vil's employment involved electrical outlets in residents' rooms. The electrical outlets behind residents' beds would sometimes spark because the beds would hit the outlets when the beds were raised or lowered. (*Id.* at #201–02). As a temporary solution to this hazard, Saint Vil proposed to his supervisors that he install wooden bumpers above the outlets to prevent the beds from hitting the outlets. (*Id.* at #202). Saint Vil's supervisors agreed with his temporary solution and directed him to install the bumpers. (*Id.*). Saint Vil's supervisors never threatened to terminate him for raising this electrical issue. (*Id.*). All thirty-four rooms at the Cooper's Trace facility required bumpers. (*Id.*). But in four months, Saint Vil installed only "a couple" of bumpers. (*Id.*). And Saint Vil never

---

¹ Pursuant to this Court's Civil Standing Order (I)(F)(2)(a)–(c), Hillstone simultaneously filed a list of Proposed Undisputed Facts (Doc. 15) and its Motion for Summary Judgment (Doc. 14). Saint Vil admitted many of those facts. (Doc. 18, #573–76). Unless otherwise noted, the Court cites Hillstone's proposed list only for admitted facts.

orally reported to Hillstone that the electrical issue violated any law, ordinance, or statute, nor did he submit a written report describing the issue. (*Id.* at #205). He likewise never reported the electrical issue to the Ohio Department of Health (ODH), the government agency that regulates nursing homes. (*Id.*).

On February 16, 2021—around the time the bedroom electrical outlet issue was discovered—the ODH, in response to a separate complaint (not by Saint Vil), conducted a survey at the Cooper's Trace facility. (*Id.* at #202–03). During that survey, ODH discovered that several electrical outlets in the hallways and kitchen were not covered or protected as required by law. (*Id.*; Doc. 15-5, #341–42). The ODH form states that the "Provider's Plan of Correction" for those deficiencies is that Saint Vil would repair the outlets. (Doc. 15-5, #341).

A few months later, on May 21, 2021, a spark from an electrical outlet in a resident's bedroom caused a small fire. (Doc. 15, #203). The fire incident led to another ODH survey a few days later, during which the ODH found the facility's defects listed in the February report had not been remedied. (*Id.*). Hillstone eventually hired an electric company to install permanent bumpers to protect the outlets. (*Id.* at #203–04).

While all these maintenance issues were occurring, Saint Vil discovered that a rumor was spreading that he and the female dietary director at the Cooper's Trace facility were romantically involved. (*Id.* at #200–01). He could not identify who started the rumor, but he nevertheless reported the rumor to the Director of Nursing and human resources. (*Id.*; Doc. 15-2, #307).

3

Hillstone terminated Saint Vil's employment on July 6, 2021. (Doc. 15-9, #380). In its termination letter, it listed five reasons for that termination: (1) Saint Vil failed to complete repairs; (2) he left job materials unattended; (3) he left trash around the building; (4) he failed to maintain the lawn; and (5) his work was generally unsatisfactory. (*Id.*; Doc. 15, #205).

Saint Vil responded by suing Hillstone in state court. He initially asserted three claims for relief: (1) a claim under the Ohio whistleblower statute, Ohio Rev. Code § 4113.52; (2) a claim for wrongful termination in violation of Ohio public policy, based on Hillstone's alleged retaliation for Saint Vil's alerting his supervisors to unsafe conditions at the facility; and (3) an Ohio wrongful termination in violation of public policy claim, based on Hillstone's alleged desire to deter Saint Vil from filing a worker's compensation claim. (State Ct. Compl., Doc. 1-3, #16–19). Saint Vil subsequently amended his complaint to add two sex discrimination claims: one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and one under Ohio Revised Code §§ 4112.02 and 4112.99.[2] (Doc. 1-14, #84–88). Hillstone then removed the case to this Court. (Doc. 1, #1–2).

After discovery, Hillstone moved for summary judgment on all of Saint Vil's claims. (Doc. 14). Saint Vil responded but, as further described below, not as to all of

---

[2] Saint Vil described Count VII—the count alleging sex discrimination in violation of Ohio law—as arising under Ohio Revised Code §§ 4112.02 and/or 4112.99. (Doc. 4, #134–35). "But this suit is about alleged employment discrimination … and § 4112.99 does not apply to employment discrimination actions. So the Court considers [Saint Vil's] claims to have been brought solely under § 4112.02." *Jones v. City of Cincinnati*, No. 1:22-cv-530, 2024 WL 707288, at *1 n.1 (S.D. Ohio Feb. 21, 2024) (citation omitted).

4

the claims. (Doc. 17). With that response on the docket, the motion is now ripe for review.

## JURISDICTION

The Court has subject-matter jurisdiction over Saint Vil's Title VII claim because it presents a federal question. 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over Saint Vil's state law claims because they, along with his federal claim, "derive from a common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), and therefore "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a).

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the non-movant bears the burden of proof at trial, as is the case with respect to Hillstone's motion for summary judgment, the movant (here, Hillstone) can establish that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law by showing that the non-moving party (here, Saint Vil) lacks evidence to support an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).

Further, as the Sixth Circuit has explained, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

5

issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)).

In sum, the non-moving party, at this stage, must present some "sufficient disagreement" that would warrant submitting the dispute to a jury. *See Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## LAW AND ANALYSIS

Before analyzing Saint Vil's claims, the Court notes that Saint Vil has abandoned two of them. Hillstone moved for summary judgment on all five of Saint Vil's claims, but Saint Vil responded with respect to only three of them: Saint Vil's wrongful termination claim, based on Hillstone's alleged retaliation for Saint Vil's raising safety issues at the Cooper's Trace facility; and his two sex discrimination claims (one under Title VII and the other under Ohio law). (Doc. 17, #567–72). Saint Vil did not address either the Ohio whistleblower claim or the wrongful termination claim based on Hillstone's purported desire to deter Saint Vil from filing a worker's compensation claim. Moreover, Saint Vil admitted to all Hillstone's proposed undisputed facts relevant to those two claims, (Doc. 18, #575–76), which means those two claims fail as a matter of law. (*Id.* (admitting termination was not motived by Saint Vil's sustaining an electric shock)); *Sutton v. Tomco Machining, Inc.*,

6

950 N.E.2d 938, 943 (Ohio 2011) (requiring nexus between termination and injury); (Doc. 18, #575–76 (admitting Saint Vil never submitted a written report of any safety violations to Hillstone)); *Youngblood v. Bd. Of Comm'rs of Mahoning Cnty.*, 847 F. App'x 267, 270–71 (6th Cir. 2021) (holding that a claim under Ohio's whistleblower statute requires written report).

The Court addresses the remaining three claims in turn.

### A. Wrongful Termination in Violation of Public Policy Claim

Saint Vil maintains that his termination was unlawful because it violates Ohio's public policy of protecting employees who voice complaints about workplace safety. (Doc. 4, #131–32). But such claims require a plaintiff to show four specific elements, and here Saint Vil cannot create a genuine dispute as to at least one of them—the jeopardy element.

By default, employment in the state of Ohio is at will. *Romero v. City of Middletown*, 479 F. Supp. 3d 660, 670 (S.D. Ohio 2020). An exception to that rule exists, however, when an employer terminates an employee and such termination violates the public policy of the state. *Id.* In such cases, an employee may bring a wrongful termination action, often referred to as a *Greeley* claim. *Id.* (citing *Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981 (Ohio 1990)).

But to succeed on such a claim, a plaintiff must prove four elements:

> (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute, or administrative regulation, or in the common law (the 'clarity element'); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize that public policy (the 'jeopardy element'); (3) that the plaintiff's dismissal was motivated by conduct related to the public

7

policy (the 'causation element'); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the 'overriding-justification element').

*Id.* at 671 (cleaned up). Whether the clarity and jeopardy elements have been met is a question of law suitable for resolution on a motion for summary judgment. *See Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308, 321 (1997).

Saint Vil attempts to locate a clear public policy favoring workplace safety in two sources: Ohio Revised Code §§ 4101.11 and 4101.12, and *Pytlinski v. Brocar Products, Inc.*, 760 N.E.2d 385 (Ohio 2002).[3] (Doc. 17, #567–68). Saint Vil's invocation of *Pytlinski* is a nonstarter. The Ohio Supreme Court has explicitly held that *Pytlinski* did not establish a standalone public policy favoring workplace safety. *Dohme v. Eurand Am., Inc.*, 956 N.E.2d 825, 830 (Ohio 2011).

The statutory provisions pose a more difficult question. Ohio Revised Code § 4101.11 requires every employer to "furnish employment which is safe for the employees engaged therein." Section 4101.12, meanwhile, states that "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe." The Ohio Supreme Court has not squarely decided whether those provisions alone establish a public policy that is sufficiently clear to satisfy the clarity element of a *Greeley* claim. *See Kulch*, 677 N.E.2d at 322 (citing

---

[3] Saint Vil also cites *Greeley* itself and *Jenkins v. Central Transport* in his response, but neither purport to independently establish a public policy in favor of workplace safety. *Greeley* established the public policy tort but did so in a case about employer withholding of child support payments. *See* 551 N.E.2d at 228–29. *Jenkins*, for its part, merely relies on the same statutory provisions Saint Vil relies on, but it is not an independent source of an Ohio public policy. *See Jenkins v. Cent. Transp., Inc.*, No. 09-cv-525, 2010 WL 420027, at *3 (N.D. Ohio Jan. 29, 2010).

8

§§ 4101.11 and 4101.12 as supportive of a public policy favoring workplace safety, but relying on the Occupational Safety and Health Administration act and the Ohio whistleblower statute as the basis for the public policy in that case). And Ohio appellate courts appear split on the issue, *see Dudley v. Siler Excavation Servs., LLC*, 210 N.E.3d 580, 589 (Ohio Ct. App. 2023) (noting the split in authority), as do Ohio federal courts applying Ohio law. *Compare Romero*, 479 F. Supp. 3d at 674–75 *with Jenkins v. Cent. Transp., Inc.*, No. 09-cv-525, 2010 WL 420027, at *3 (N.D. Ohio Jan. 29, 2010).

In this case, however, the Court need not contribute further to that debate. That is because, even assuming Saint Vil's citation to those statutes satisfies the clarity element, he has presented no facts from which the Court could conclude that Saint Vil's employer jeopardized Ohio's (assumed) public policy favoring workplace safety by terminating Saint Vil. Yes, Saint Vil complained about the safety hazard that the electrical outlets posed at the Cooper's Trace facility. But Hillstone responded to that concern, and did so *by tasking Saint Vil* (who was a maintenance worker) with taking specific steps (that Saint Vil had recommended) to remedy the safety hazard. (Doc. 15, #201–02). Such repairs were well within Saint Vil's typical duties. (Doc. 15-2, #277–84, 296–97). Moreover, Hillstone gave Saint Vil ample time to fix the issue (months, in fact) during which Saint Vil installed only a couple of electrical outlet bumpers. (Doc. 15, #202). Terminating an employee in circumstances like those here would not jeopardize a public policy favoring workplace safety. Indeed,

9

terminating the person who failed to undertake the required repairs despite being directed (and provided an opportunity) to do so may instead *further* that policy.

Saint Vil has failed to show that his termination jeopardized a clear public policy favoring workplace safety. Accordingly, his wrongful termination claim fails as a matter of law.

### B.   Sex Discrimination Claims

Saint Vil asserts that his termination violated both Title VII of the Civil Rights Act of 1964 and Ohio Revised Code Chapter 4112. (Doc. 4, #133–37). While the two claims are distinct, the Ohio Supreme Court has held that federal case law construing Title VII applies with equal force to Ohio Revised Code Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio C.R. Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981). Thus the same analysis, under which Saint Vil loses, applies to both claims.

To begin, Saint Vil does not put forward a traditional disparate treatment claim or claim that he was terminated because he was a man. (*See* Doc. 18, #573). He admits that he can provide no similarly situated employee who was treated better because of her sex. (*Id.*).

Rather, Saint Vil claims Hillstone is liable under a hostile work environment theory. Under such a theory, a plaintiff must show that (1) he is a member of a protected class, (2) he was harassed, (3) the harassment was based on sex, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment, and (5) the employer knew or should have known of the harassment and

10

failed to take corrective action. *Garcia v. Beaumont Health Royal Oak Hosp.*, No. 22-1186, 2022 WL 5434558, at *3 (6th Cir. Oct. 7, 2022). To determine whether harassment is severe or pervasive enough to alter the terms and conditions of employment, the Court considers the frequency of the harassment, whether it is physically threatening or humiliating or merely offensive speech, and whether it unreasonably interferes with the employee's work performance. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011). Subjective offense, without more, is insufficient. *See Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 459 (6th Cir. 2004). Rather, the harassment must be severe enough that a reasonable person would find it abusive. *Id.*

The Court begins and ends with the fourth element. Saint Vil points to no evidence of harassment save an anonymous rumor that he had a romantic relationship with the dietary director at the Cooper's Trace facility, which somehow "ruined" his reputation. (Doc. 18, #573). When asked at his deposition how he was harassed, Saint Vil replied,

> A: [T]here were rumors from what I heard that the maintenance director, that's me, was okay and then they were just trying to see who it is. Everybody, I guess, to me seemed like was just seeing me as a piece of meat.
>
> Q: The harassment that you are talking about that you were the victim of were the rumors, correct, that's what the harassment is?
>
> A: Yes.
>
> Q: … Let's do it another way. Were you harassed in any other way other than these rumors that we have been talking about?
>
> A: No.

(Doc. 15-2, #311). In short, Saint Vil presented no evidence that this anonymous rumor (which, absent more context showing something else, strikes the Court as relatively benign workplace gossip) was threatening, frequently repeated, or affected his work performance, other than making him "feel like a piece of meat." As a matter of law, this type of "harassment" (if it amounts to that) was not sufficiently severe or pervasive to alter the terms or conditions of Saint Vil's employment. Saint Vil's only argument to the contrary is a conclusory statement that Saint Vil suffered a ruined reputation and felt like a piece of meat, and that such feelings are sufficiently severe or pervasive to support a hostile work environment claim. The Court concludes that is not so. While Saint Vil may have taken offense, his subjective offense, arising from a work environment that is neither abusive nor hostile based on a protected class, is not enough to support a sex discrimination claim under Title VII or Ohio Revised Code Chapter 4112.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Hillstone's Motion for Summary Judgment (Doc. 14) and **DISMISSES** all of Saint Vil's claims **WITH PREJUDICE**. Accordingly, the Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this matter on its docket.

**SO ORDERED.**

July 9, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**